ARKANSAS TEACHER RETIREMENT SYSTEM, Appellant

v.

Brenda SHORT, in Her Official Capacity as Garland County Assessor; Jo West–Taylor, in Her Official Capacity as Garland County Treasurer; and Rebecca Dodd–Talbert, in Her Official Capacity as Garland County Collector, Appellees.

No. 11–132.

Supreme Court of Arkansas.

June 16, 2011.

Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., Little Rock, by: John Keeling Baker, for appellant.

C. Burt Newell, Hot Springs, for appellee.

COURTNEY HUDSON HENRY, Justice.

Appellant Arkansas Teacher Retirement System (ATRS) appeals an order entered by the Circuit Court of Garland County in which the court ruled that certain real property owned by ATRS was not exempt from taxation. For reversal of that decision, ATRS contends that the circuit court erred in concluding that the property was not exempt from the payment of ad valorem taxes pursuant to article 16, section 5 of the Arkansas Constitution. Should it prevail on that point, ATRS asserts that the circuit court erred in three other respects by not ordering a refund of the taxes erroneously assessed and paid for the tax years of 2005, 2006, and 2007; by not ruling that the 2008 assessment was illegal; and by not issuing a writ of mandamus to compel the assessor to separately list the property on the rolls as tax-exempt property. Our jurisdiction is pursuant to Ark. Sup.Ct. R. 1–2(a)(1), as this is an appeal involving the interpretation and construction of the Arkansas Constitution. We affirm the circuit court's

decision that the property does not qualify for an exemption. As such, the remaining arguments are moot.

Established by the General Assembly in 1937, ATRS is a combination contributory/noncontributory retirement system that provides pension, disability, and survivor benefits to employees of the Arkansas public school system. ATRS's holdings are diversified, and its assets are held in a single trust fund that is overseen by a fifteen-member board of trustees. The board's ex officio members include the Arkansas Bank Commissioner, the Auditor of State, the Director of the Department of Education, and the Treasurer of State, who serves as the custodian of the system's assets. *See* Ark.Code Ann. §§ 24–7–301 & –402 (Supp.2009). In managing its assets, ATRS is required to comply with the "prudent investor rule" set forth in Arkansas Code Annotated sections 24–2–610 to –619 (Supp.2009). By law, it also must strive to invest not less than five percent of its assets in Arkansas-related investments "so as to favorably impact the economic condition of and maximize capital investments in the State of Arkansas." Ark.Code Ann. § 24–2–608 (Supp.2009). According to the "Policies, Rules and Regulations" promulgated by the board of trustees, ATRS has also targeted five percent of its total assets to be invested in real estate.

To satisfy these dual investment objectives, in 2000 ATRS acquired a parcel of commercial real estate that is known as the Southcenter Shopping Center. Located on Central Avenue in Hot Springs, Arkansas, the shopping center is home to a number of private business enterprises, such as Kroger and Hobby Lobby, that lease space and pay rent to ATRS. In turn, ATRS places the rental income into the trust fund it administers for the payment of benefits. Since the purchase, the property has been listed as taxable in Garland County, and ATRS paid its share of ad valorem taxes through 2007 without protest.

In August 2009, ATRS petitioned the County Court of Garland County seeking a determination that the shopping center was exempt from ad valorem taxation. By an order dated November 18, 2009, the county court rejected ATRS's contention that the property qualified for an exemption. Pursuant to District Court Rule 9, ATRS appealed that decision to the Circuit Court of Garland County by filing within thirty days a notice of appeal and a certified copy of the county court's order. In its petition filed in circuit court, ATRS named as defendants appellees Brenda Short, in her official capacity as the Garland County Assessor; Jo West–Taylor, in her official capacity as the Garland County Treasurer; and Rebecca Dodd–Talbert, in her official capacity as the Garland County Collector. ATRS asserted that the shopping center was exempt from taxation pursuant to article 16, section 5 of the Arkansas Constitution as "public property used exclusively for public purposes," as well as Arkansas Code Annotated sections 24–2–703 and 24–7–204 (Repl.2000 & Supp.2009), each of which provides that assets owned by ATRS are exempt from taxes by the state, any political subdivision, or agency. In terms of relief, it requested a refund of the ad valorem taxes paid in 2005 ($79,262.57), 2006 ($83,104.74), and 2007 ($84,095.97).[1] ATRS also sought to be relieved of the obligation to pay such taxes in 2008 and asked for a writ of mandamus compelling the Garland County

---

1. The recovery of any overpayment in taxes resulting from erroneous assessments is limited to three years after the payment of those taxes. Ark.Code Ann. §§ 26–23–203(a)(11) & 26–35–901(a)(2) (Supp.2009).

Assessor to note the property's tax-exempt status on the assessment roll in accordance with Arkansas Code Annotated section 26–25–718 (Repl.1997).

The circuit court issued its judgment on September 23, 2010, adopting the proposed findings offered by appellees. In its ruling, the circuit court found that the rent-paying tenants of the retail shopping center were private businesses with no affiliation to the State of Arkansas and that ATRS utilized its profit to fund the trust it administers. The court concluded that the shopping center was not exempt under article 16, section 5 of the Arkansas Constitution because the property was not used exclusively for public purposes. The circuit court also determined that the purported exemptions authorized by Arkansas Code Annotated sections 24–2–703 and 24–7–204 were unavailing in light of article 16, section 6 of the constitution, which provides that "all laws exempting property from taxation other than as provided in this Constitution shall be void."

On appeal, ATRS asserts that the shopping center is exempt from taxation under the constitution because it is public property that is used exclusively for public purposes. Concerning the issue of exclusive public use, ATRS stresses that it acquired and utilizes the property in fulfilling its legislatively mandated purpose of providing benefits, as exemplified by Arkansas Code Annotated section 24–7–403(a) (Repl. 2000), which declares that "[a]ll assets of the Arkansas Teacher Retirement System shall be held for the sole purpose of paying benefits and making disbursements . . . and shall be used for no other purpose whatsoever[.]" It also emphasizes that it is required under Arkansas Code Annotated section 24–1–101 (Repl.2000) to hold, invest, and disburse its assets for the "exclusive purpose" of providing benefits to its members. ATRS points out that it

must conduct its affairs as would a prudent investor and that it must include at least five percent of its portfolio in Arkansas-related investments. ATRS suggests that an exemption will lie where, as here, property is owned and used by a public entity pursuant to a legislative scheme which indicates that the use of the property constitutes an exclusive public purpose. It argues that the public purpose advanced by its legislative mandate is comparable to the public purpose identified in our decisions of *Wayland v. Snapp*, 232 Ark. 57, 334 S.W.2d 633 (1960), and *Pulaski County v. Jacuzzi Brothers Division*, 332 Ark. 91, 964 S.W.2d 788 (1998). ATRS also relies on the exemptions found in Arkansas Code Annotated sections 24–2–703 and 24–7–204.

■ Article 16, section 5 of the Arkansas Constitution requires equality and uniformity in the levy of property taxes. Subsection 5(b) contains certain exemptions from taxation and provides as follows:

(b) The following property shall be exempt from taxation: public property used exclusively for public purposes; churches used as such; cemeteries used exclusively as such; school buildings and apparatus; libraries and grounds used exclusively for school purposes; and buildings and grounds and materials used exclusively for public charity.

Thus, to be exempt from taxation, the property first must be public property, and second it must be used exclusively for public purposes. There is a presumption in favor of the taxing power of the state, and all tax-exemption provisions must be strictly construed against the exemption. *Weiss v. Bryce Co., LLC*, 2009 Ark. 412, 330 S.W.3d 756. As this court has consistently held, taxation is the rule and exemption the exception. *City of Fayetteville v. Phillips*, 306 Ark. 87, 811 S.W.2d 308

(1991). Indeed, we have said that "to doubt is to deny the exemption." *Pledger v. C.B. Form Co.*, 316 Ark. 22, 25, 871 S.W.2d 333, 334 (1994) (citing *Pledger v. Baldor Int'l, Inc.*, 309 Ark. 30, 33, 827 S.W.2d 646, 648 (1992)).

It is settled that a taxpayer must establish an entitlement to an exemption beyond a reasonable doubt. *Crittenden Hosp. Ass'n v. Bd. of Equalization of Crittenden Cnty.*, 330 Ark. 767, 958 S.W.2d 512 (1997). On appeal, we review tax cases de novo, setting aside the findings of fact by the circuit court only if clearly erroneous. *City of Little Rock v. McIntosh*, 319 Ark. 423, 892 S.W.2d 462 (1995).

In the case at bar, appellees concede that the shopping center is publicly owned property. The dispute is whether the property is used exclusively for a public purpose. The bedrock principles of law on this subject were established over a century ago. In the case of *Brodie v. Fitzgerald*, 57 Ark. 445, 22 S.W. 29 (1893), a charitable hospital supported itself with income from rental houses and a mill. In denying tax-exempt status to the properties, we held that property is exempt under the constitution only when it is actually and directly used for charitable purposes. In so holding, we focused on the nature of the property's use and did not consider determinative the fact that revenues generated by the property were devoted to the purpose for which the charity was organized.

In *School District of Fort Smith v. Howe*, 62 Ark. 481, 37 S.W. 717 (1896), the district invested in property for the purpose of sale or rent. Although the profits were to be used to benefit the public schools in the district, we held that such a use did not justify a holding that the land was used exclusively for public purposes within the meaning of the constitution. Noting that not all publicly owned property was exempt under article 16, section 5, we observed:

> If the intention of the makers of the constitution was to exempt public property the use of which inures to the benefit of the public in some way, then the effect is to exempt all public property, for such property can be used lawfully only for the public benefit; and this seems to be the conclusion reached by counsel for appellant. But all public property is not exempt. All property belonging to the public must be used for the benefit of the public, but our constitution distinguishes and sets apart as exempt from taxation only that public property which is itself used exclusively for public purposes. If a school district purchases land not to be used for school grounds or for some other public purpose, but as an investment of its funds, and for the purpose of sale or rent, then it must take such lands with the burden which the law imposes even upon public property not used exclusively for public purposes. It must pay taxes upon such lands as other landowners do.

*Id.* at 487, 37 S.W. at 718.

In our decision of *Robinson v. Indiana & Arkansas Lumber & Manufacturing Co.*, 128 Ark. 550, 194 S.W. 870 (1917), a levee district purchased property after forcing a sale for the nonpayment of levee taxes. We held that the property was exempt while in the hands of the levee district because the district acquired the land in the exercise of its governmental functions and, significantly, because it did not hold the land for purposes of gain or as income-producing property. We spoke of the *Howe* decision and added:

> There is a material difference between the use of property exclusively for public purposes and renting it out and then applying the proceeds arising therefrom to the public use. The property under

our Constitution must be actually occupied or made use of for a public purpose, and our court has recognized the difference between the actual use of the property and the use of the income. So it will be seen that, in our own cases last referred to, the property itself was not directly occupied or made use of for public purposes but only the income derived therefrom, and for this reason the court held that the property was not exempt from taxation under our Constitution.

*Id.* at 557, 194 S.W. at 873.

Mindful of these principles, in *Hilger v. Harding College, Inc.*, 231 Ark. 686, 331 S.W.2d 851 (1960), we held that a laundry, dairy, and printing press operated by the college on its property were not exempt from taxation because the lands were not being used directly and exclusively for school purposes. Also, in *McIntosh, supra,* we continued to recognize that, even when proceeds received from public property rented for private purposes are used for public purposes, the land is taxable, as the actual use must be public. In *Crittenden Hospital Ass'n, supra,* yet another case involving rental income, we reiterated that the applicable test for purposes of article 16, section 5 is not whether the rents collected from the building are used for a public purpose, but whether the building itself is used exclusively for a public purpose. We have also emphasized that another reason to deny an exemption lies in the unfair advantage gained when the property is in competition with other tax-paying businesses in the area. *Crittenden Hosp. Ass'n, supra; McIntosh, supra; Phillips, supra; Robinson, supra.*

Despite this clear authority to the contrary, ATRS maintains that the shopping center is nonetheless exempt from taxation based on the decisions in *Snapp, supra,* and *Jacuzzi Brothers, supra.* In *Snapp,* the City of Batesville and Independence County issued general obligation bonds for the purchase and development of land for industrial purposes. The land was then leased to a company for the operation of a manufacturing plant. The issuance of the bonds was authorized by amendment 49 of the Arkansas Constitution[2] and enabling legislation passed by the General Assembly as Act 9 of 1960 that were enacted to relieve unemployment by promoting industrial development. We held that the property was exempt as the entire purpose for the adoption of amendment 49 and the enactment of Act 9 was for the benefit of the public welfare. *Jacuzzi Brothers* also involved property developed with bonds issued under the authority of amendment 49 and Act 9. There, we held that the property retained its tax-exempt status after the retirement of the bonds.

ATRS's reliance on these decisions is misplaced. In holding that property was exempt in *Snapp,* we did so with the proviso that "[t]his result would follow *only* where the title to property is acquired and the property itself is used by a city or county (or both) pursuant to Act No. 9 and/or Amendment No. 49." *Snapp,* 232 Ark. at 72, 334 S.W.2d at 642 (emphasis supplied). We confirmed this limitation in *Jacuzzi Brothers* by saying that "[t]he analysis in *Snapp* addressed the entirety of a unique program—carved out by the people of this State by their adoption of Amendment 49 and created by our legislature by the passage of Act 9 of 1960— designed for the purpose of developing and securing industry." *Jacuzzi Bros.,* 332 Ark. at 98, 964 S.W.2d at 791. Because

---

**2.** Amendment 49 was repealed and replaced in 1984 by amendment 62 of the Arkansas Constitution.

this case does not involve a bond issue under amendment 49 or Act 9, the holdings of these two cases do not apply.

¶10 We also reject the contention that the shopping center enjoys an exemption pursuant to Arkansas Code Annotated sections 24–2–703 and 24–7–204. Although these statutes purport to exempt the assets of ATRS from taxation, they must yield to the constitution, which permits an exemption from the payment of ad valorem taxes only when the property is used exclusively for public purposes. *See McIntosh, supra.*

This court has consistently drawn a distinction between property that is used exclusively for a public purpose and property that simply produces income that is used for the public benefit. We trust that any entity created by the legislature serves a beneficent public purpose, and we do not doubt that the public purpose advanced by ATRS is a worthy one. However, unless the property utilized by an agency is actually and exclusively used for a public purpose, it is not entitled to an exemption under the constitution. Here, it is undisputed that the property in question is a retail shopping center that is leased to private businesses. As such, ATRS has failed to demonstrate that the structure is used exclusively for public purposes, and we hold that the circuit court's decision that the property is subject to taxation is not clearly erroneous.

Affirmed.